## SMITH *et al.* *v.* BEARDSLEY *et al.*

*(Circuit Court of Appeals, Eighth Circuit. June 20, 1892.)*

### No. 100.

**1. WILLS—CONSTRUCTION—NATURE OF ESTATE—JUS DISPONENDI.**

A testator, after directing the payment of his debts, bequeathed to his wife all his "goods, chattels, merchandise, moneys, choses in action, lands, and personal property, to be hers during her natural lifetime or widowhood." He further provided that a sufficient portion of his estate should be appropriated to the support and education of his children, and that at the death of his wife an equal division of his estate should be made to his children. *Held,* that the wife did not take a mere life estate with remainder in fee to the children, but she had full power to sell the personalty affected by the will, for the purpose of carrying out its provisions.

**2. SAME.**

Where the wife receives land in payment for the personalty so sold, she can convey it in fee simple to a purchaser for value, free from any claim or interest on the part of the children.

Appeal from the Circuit Court of the United States for the Eastern District of Arkansas. Affirmed.

*William G. Whipple,* for appellants.

*Daniel W. Jones, (A. B. Williams* and *R. B. Williams,* on the brief,) for appellees.

Before BREWER, Circuit Justice, SANBORN, Circuit Judge, and SHIRAS, District Judge.

SHIRAS, District Judge. The bill in the present cause was filed by J. D. Beardsley, for the purpose of quieting the title to certain realty situated in Hempstead county, Ark., against adverse claims asserted thereto by James F. Smith, Joel G. W. Yowell, and Minnie Yowell, and Snow Yowell, minor children and heirs at law of Eliza P. Yowell, deceased. The record shows the following to be the material facts out of which the controversy between the parties arises:

William H. Rector, a resident of Hempstead county, Ark., on the 22d of January, 1868, executed his last will, which reads as follows, omitting the formal parts:

"*Item 2d.* That I do hereby require that all my just debts be paid, including my funeral expenses, out of my estate; that after which I do hereby give and bequeath to my beloved wife, Augusta M. Rector, all my estate, including all my goods, chattels, merchandise, moneys, choses in action, lands, and personal property, to be hers during her natural lifetime or widowhood, and no longer.

"*Item 3d.* It is my will that a sufficient portion of my estate be appropriated for the support and education of my children, namely, Martha Ellen, George Lafayette, Eliza Prudence, Mary Cordelia, and Jesse Nathaniel, and that said appropriations be made as nearly equal as possible, including what has already been expended for the benefit of the older ones of said children by my wife or executor of my estate.

"*Item 4th.* And I furthermore will that at the death of my wife, or at her marriage, that an equal division of my estate be made to each of my above-named children by the executor of said estate.

"*Item 6th.* I do hereby appoint my wife, Augusta M. Rector, the executrix of this my last will and testament, thereby revoking all others whatever; said will and testament *to be in full force from and after my decease.* Signed and sealed with my own hand this, the 22d day of January, A. D. 1868, in the presence of witnesses, and I do hereby request that E. M. Northum and G. E. Bryant subscribe their names as witnesses to this, my last will and testament. W. H. RECTOR. [Seal.]"

Upon the death of Rector, which occurred on the same day the will was executed, the same was proved and recorded in Hempstead county in due form of law. The widow never qualified as executrix, nor have letters of administration ever been issued upon the estate. Mrs. Rector took possession of the property left by her husband, which mainly consisted of a stock of merchandise, and continued in the mercantile business, part of the time with her sons-in-law, Joel G. W. Yowell and F. T. Shepherd, and part of the time by herself. Finally she sold the stock in trade to Joel G. W. Yowell, taking his note for $3,400 in payment therefor. On the 17th of June, 1879, Yowell sold to Mrs. Rector, in payment of his note, the E. ½ of the N. W. ¼, the S. W. ¼, the N. E. ¼, part of the S. E. ¼ of the N. E. ¼, part of the N. W. ¼ of the N. E. ¼, the northwest quarter of the northwest quarter, and part of blocks 6 and 7, in the town of Nashville, all in section 26, township 9 S., range 27 W. of the fifth meridian; and executed a warranty deed to A. M. Rector, as administratrix of the estate of W. H. Rector, deceased, but by mistake omitted to include therein the N. W. ¼ of the N. W. ¼ of said section 26.

In the year 1883 the Arkansas & Louisiana Railway Company undertook to extend its line of railroad in the direction of the town of Nashville, and in order to induce the company to build the road to a point west of Mine Creek certain citizens entered into a contract with J. D. Beardsley, who had a controlling interest in the management of said railway, which agreement is as follows:

"Whereas, the citizens of Nashville and the surrounding country are desirous of having the Arkansas and Louisiana Railway extended on or near the line recently located by S. C. Martin, civil engineer, to some point west of Mine Creek, and they have agreed with J. D. Beardsley, of Washington, Arkansas, that if he will cause the said road to be extended as aforesaid to some point west of Mine Creek they will purchase and give to him a good and unincumbered title to the following lands, situated near Nashville, in Howard county, to wit: The N. W. of the N. W., the N. E. of the N. W., the S. E. of the N. W., the N. W. of the N. E., the N. E. of the N. E., the S. W. of the N. E., the S. E. of the N. E., all in section 26, township 9 south, range 27 west, all of which is known as the 'Rector Place,' and containing, exclusive lots sold out of the N. E. of N. W. and N. half of N. E., two hundred and thirty-seven acres, more or less, and also the following lands: The N. ½ of the S. E. of section 26, township 9 south, range 27 west, belonging to W. C. Sypert, and containing 76 acres, exclusive of four acres sold heretofore out of N. E. of S. E. And to enable the company to go on at once with the construction of their said road pending the purchase and making deeds of the said lands, we, the undersigned, jointly and severally guaranty the full and complete fulfillment of the said agreement on the part of the citizens of Nashville and other parties interested with them.

"It is understood and agreed as a part of the consideration for this land that J. D. Beardsley shall cause to be located on the land herein referred to a depot, and shall lay out a town thereon; and failure on his part so to do will cause the forfeit of this undertaking.

"Witness our hands this 30th day of August, 1883.

| | |
|---|---|
| "J. D. BEARDSLEY. | ISAAC M. PUCKETT. |
| "W. C. SYPERT. | J. G. W. YOWELL. |
| "D. D. WOMACK. | S. B. REECE. |
| "GEO. L. RECTOR. | D. M. BRYANT. |
| "F. P. HOLT. | I. PARISH." |

In order to procure the conveyance of the lands described in the foregoing contract the citizens interested donated the necessary funds, and through George L. Rector and Joel G. W. Yowell a contract was made with Mrs. Rector for the conveyance of the lands by her received from Yowell as above stated, the price to be paid her being fixed at $3,000, which sum being paid, she executed a deed of the premises to Beardsley, dated September 7, 1883, and on the 21st of January, 1885, she executed a second deed containing the following recitals:

"Know all men by these presents, that whereas, by a certain bond made by W. C. Sypert, D. D. Womack, Geo. L. Rector, F. P. Holt, Isaac M. Puckett, J. G. W. Yowell, S. B. Reese, D. M. Bryant, and I. Parrish, they guarantied, on the 30th day of August, 1883, to J. D. Beardsley, the conveyance of the lands in said bond described, by a good and sufficient title, upon the performance of certain conditions and the payment of the sum of three thousand dollars to me; and whereas, the said conditions have been performed, and the said money has been paid; and whereas, I, on the 7th day of September, 1883, executed a deed to the said J. D. Beardsley, in which the land was not described in the same manner as it is described in the said bond: Now, therefore, to the end that there may be no discrepancy, and that the description in the bond and that in the conveyance may be identical, and for the consideration aforesaid, I, A. M. Rector, have bargained and sold, and do by these presents bargain, sell, and convey, to the said J. D. Beardsley, the following described lands, lying and being situate near Nashville, in Howard county, in the state of Arkansas, to wit," etc.,

—and also covenanting to warrant and defend the title to said land against all lawful claims. Upon the delivery of the deed dated September 7, 1883, Beardsley took possession of the realty, laid out a town, and made other improvements thereon.

Some question having arisen touching the rights of the children of William H. Rector to the land so held by Beardsley, he requested Joel G. W. Yowell to procure quitclaim deeds of said premises from the heirs of Rector, and on the 18th of May, 1885, a quitclaim deed thereof to Beardsley was executed by George L. Rector, J. N. Rector, M. E. Shepherd, (nee Rector,) and Minnie Rector. It now appears, however, that in December, 1884, Minnie Rector had executed a quitclaim to some 240 acres of land in Howard county, Ark., which, it is claimed, was intended to convey her interest in the lands in question to James F. Smith; and on the 31st of December, 1884, F. T. Shepherd and Martha Ellen, his wife, (nee Rector,) and Jesse N. Rector, had quitclaimed their interest in 200 acres of the land to E. P. Yowell, who was the wife of Joel G. W. Yowell, and mother of Minnie and Snow Yowell.

For the purpose of putting at rest all dispute in regard to the title held by Beardsley in the premises in question, the present bill was filed, in which the complainant claimed to be the owner in fee thereof. The defendant James F. Smith, in his answer, avers that as grantee in the deed executed by Minnie Rector under date of December 29, 1884, he is the owner of one fifth in fee of the entire premises, and the defendants Minnie and Snow Yowell, as the heirs at law of their deceased mother, Eliza P. Yowell, claim title to three fifths of 200 acres and one fifth of 40 acres, and admit that the complainant is entitled to one fifth in fee of the 200 acres and three fifths in fee of the 40 acres, and to an estate for the life of Mrs. A. M. Rector ; and by cross bills filed in the cause the defendants pray to have the title adjudged accordingly. The answer of Joel G. W. Yowell admits that through mistake the N. W. ¼ of N. W. ¼ of section 26, township 9 S., range 27 W., was omitted from the deed executed by him to Mrs. A. M. Rector, and avers that he is ready to convey the same to whomsoever the court may adjudge to be entitled thereto.

The case was heard before the circuit court upon the pleadings and proofs, and a decree was entered in favor of complainants, the Arkansas & Louisiana Railway Company having been made co-complainant with J. D. Beardsley. To reverse this decree the case has been brought to this court, and counsel have fully argued the case upon its merits. As stated in the brief of counsel for appellees, the only question in this case is: "Did Mrs. Rector hold the lands in controversy in such manner that her deed to Beardsley carried with it the fee-simple title?"

On behalf of the appellants it is claimed that under the will of W. H. Rector the widow had only a life estate in the merchandise; that, as she did not qualify as executrix under the will, she had no power to deal with the property except as life tenant; that, as such, she could only dispose of the same for the purpose of making a permanent investment in the land; that when the title passed to her the children of W. H. Rector took the same interest in the lands that they had in the merchandise, and stood in the same relation to it as they would had the land belonged to their father at the time of his death. By the bill and cross bills herein filed all the parties appeal to the court as a court of equity, to adjudge what their rights are in the realty in the bill described. This court is not, therefore, sitting as a court of probate to control the actions of an executrix or administratrix in the administration of the estate, nor to direct the distribution of the assets of the estate, but to determine what, in equity, are the rights of the parties to the realty which is the subject of the litigation. On behalf of the complainants it is asserted that they have become the owners of the realty, having purchased it of Mrs. Rector, to whom it had been conveyed by Joel G. W. Yowell. Under the evidence in the cause it cannot be questioned that, as between the complainants and Mrs. Rector, it was the intent of both parties that the full fee-simple title of the land should be conveyed to Beardsley. Mrs. Rector was paid the sum she asked for such com-

plete title, and she executed a warranty deed of the land, because it was her purpose to convey the full title to her grantee.

Legally and equitably, therefore, as between Mrs. Rector and complainant Beardsley, the latter is entitled to the land, and if the title, or any part thereof, fails, Mrs. Rector will be liable therefor under the covenants in the deed executed by her. The theory of the defendants is that the land passed to Mrs. Rector under such circumstances that it stands in the place of the merchandise sold to Yowell; that in this merchandise Mrs. Rector had only a life interest, there being a vested fee in remainder in the children; that therefore the fee title in the land vested in the children, subject to the life estate of the widow, and therefore the deed of the widow did not convey the fee. Under the provisions of the will, the title of the property left by the testator passed to Mrs. Rector. She was authorized to use it for her own support during her lifetime or widowhood, and also to appropriate whatever portion thereof should be necessary for the support and education of the five children of the testator. The evidence shows that at the death of W. H. Rector the property of his estate coming into the possession of Mrs. Rector was about $7,000; that she had of her own means about $3,000; that Mrs. Rector continued in the mercantile business for some years; that she contributed to the support and education of her children until the youngest, Jesse N., became of age, in 1882, or for a period of 14 years after the death of her husband; that she gave them good educations, sending four of them away to school and college for that purpose; that the money needed for so doing was derived from her own money and from the profits made by her in business, as well as from the money coming from her husband's estate. The claim of the defendants is based upon the theory that the land in dispute represents the personal property owned by W. H. Rector at the time of his death, and that this personalty has been invested in the land. To sustain this theory the defendants must take the position that Mrs. Rector became a trustee when she took possession of the property, and that she is accountable for the disposition of the property made by her. If she had been made a party to these proceedings for the purpose of an accounting, before she could be adjudged to be responsible for any sum she would be entitled to set off against the value of the property coming into her hands under the will the sums by her expended in supporting and educating her children, as well as the amount needed for her own support, even though the latter might be limited to the yearly income from the property, according to the theory of the defendants. Unless upon such accounting it should appear that Mrs. Rector was indebted to her children, they could not assert a claim against her, nor against any property which she had sold for value to third parties, because the property sold becomes liable only in case it represents money or property for which the trustee is liable to the beneficiaries. As already stated, Mrs. Rector is bound, by the covenants in her deed to Beardsley, to defend the title to the land; and, if a decree should pass in this case in favor of defendants, a right of recov-

ery against Mrs. Rector would exist in favor of her grantee, so that practically what the defendants in this cause are seeking is a decree declaring that Mrs. Rector, as trustee, is liable to, respond to her children for the value of the realty by her conveyed to Beardsley. Certainly, before a court would be justified in depriving Beardsley of the property, of which he is a purchaser for value, it must be made plain that his grantor, Mrs. Rector, had not the title thereto with full power to convey the same to the purchaser; and certainly, also, before the court can adjudge that Mrs. Rector is liable to her children for the value of the stock of goods coming into her hands under the will of her husband, or for any part thereof, it must be made plain, upon a proper accounting, and after due credit for all sums expended by her in the support and education of the children and such other allowance as might appear to be equitable, that she is indebted to them; and it is only for the sum, if any, which might be found due upon a full accounting, that the children, as beneficiaries under the will of their father, could claim liability to them from Mrs. Rector, or could assert the right to follow property conveyed by her to third parties. Such an accounting is not sought in the present case. The facts that are made to appear are that in 1868 there passed into the possession of Mrs. Rector some $7,000 worth of personal property belonging to her husband's estate; that, as directed by the will of her husband, she appropriated the means necessary for the support and education of her five children, and it is not shown that the outlay caused thereby did not wholly exhaust the property coming into her possession, or that there is anything in her hands for which she should be held accountable to her children. If the court is justified in assuming anything in regard to the state of the account between the widow and children of William H. Rector from the undisputed facts appearing on this record, the most natural and probable conclusion would be that the widow, in supporting and educating her children, had expended far more than the value of the property coming into her hands from her husband's estate.

Admitting the position to be well taken that the stock of goods belonging to W. H. Rector came into possession of Mrs. Rector as a trustee charged with the duty of appropriating the same as in the will directed, it does not appear that she has in any way been derelict in the performance of such duty. It is not denied that she supported and educated her children; and if, in so doing, she expended a sum greater than the amount she realized from her husband's estate, certainly her children, who were benefited by such outlay, cannot hold her accountable for the value of the property received in trust, but deny her credit for the expenditures made. On the pleadings and the evidence in this cause, nothing is made to appear that would justify the court in holding, even if she were a party to the record, that Mrs. Rector, as a trustee of the property coming into her hands under the will of her husband, has been derelict in her duty as trustee, or that there is any ground for holding her liable to any of her children for the property, or any part of it, that came into her hands, and, unless such liability is established against her, there exists no foundation for holding that, when she con-

veyed the realty to Beardsley, it passed to him charged with a trust on behalf of her children.

The realty never was owned by W. H. Rector, and the title thereto was not affected by his will. It was conveyed to Mrs. Rector 11 years after the death of her husband, in payment of a promissory note given by her son-in-law for the stock of goods sold him by Mrs. Rector. The probabilities are that but little, and possibly none, of these goods belonged to W. H. Rector. What portion of them could be said to represent the goods owned by him and passing to his widow under the will is uncertain. Under the will Mrs. Rector had the right to sell and dispose of the goods, for in no other way could the provisions of the will in regard to the support and education of the children be carried out. If she sold the goods for money or property, real or personal, the proceeds, in whatever form she received the same, were liable to be used, and it was her duty to use the same, in the support and education of her children. If she had bartered the goods for land, and had then sold the land for money, and used the latter in paying for the education of her children, certainly the land, in the hands of her grantee, could not be subjected to a trust in favor of the children.

Evidently recognizing the insuperable difficulties in the way of charging the land in the hands of Beardsley with a trust in favor of the children of W. H. Rector without claiming that Mrs. Rector had in any way been derelict in her duty as a trustee, or without bringing her into the case for the purposes of an accounting, counsel for the defendants adopts the theory that under the will of W. H. Rector the widow had only a life estate in the personalty, the fee title being in the children; and therefore it was the duty of the widow, as executrix, to permanently invest the property by converting it into realty or other like form; and therefore, when the widow sold the stock of goods, and took the land in payment, the fee title thereto vested in the children and the life estate in the widow. The will gave to Mrs. Rector the entire estate of the testator, naming her as executrix, and directing the distribution to be made of the property as follows: *First.* All just debts and funeral expenses were to be paid. *Second.* Sufficient part of the estate to support and educate the five children was to be so used. *Third.* Subject to the foregoing provisions, the entire estate was to be for the benefit of Mrs. Rector during her lifetime or widowhood. *Fourth.* At the death or marriage of the widow an equal division of the estate to be made to the children of testator.

If, in order to pay the debts of the estate and support and educate the children, it became necessary to sell the entire property, certainly the power and right so to do was given by the will to Mrs. Rector. The main purpose of the will is to provide for the payment of debts, the support and education of the children, and the support of the widow, and then, if there was anything left after these purposes had been fulfilled, the residue so left is to be equally divided. The will therefore does not transfer the title to any of the property to the children, nor does it create, technically, an estate by way of remainder in fee in the children.

Taking the will as a whole, it cannot be construed to mean that the testator intended to only give to his widow the right to use the stock of goods, which formed the bulk of the estate, during her lifetime, and then at her death to divide the goods among the children. To avoid the patent absurdity of such a construction counsel argue that it was the duty of the widow to convert the goods into realty or the like, in order that she could use the income; and that, when the conversion took place, the fee title vested in the children. The difficulty with this theory is that the will does not direct this to be done, and it would not accord with its other provisions had it been done. The will gives the property, with full power and control over it, to the widow, directing her to pay the debts, to support and educate the children, and support herself by means of the property. To accomplish these plain directions of the will by means of a stock of merchandise it was absolutely necessary that she should have the right to sell the goods, either by keeping on with the business, as she did for years, or by selling the same in the lump. Having the right to sell the property, the purchaser from her took a complete title, and the money or property that, from time to time, she received for the goods, she had a right to use or dispose of for the purpose of carrying out the provisions of the will. When she finally sold the stock on hand to Yowell, she conveyed a good and full title thereto to the purchaser; and when she subsequently received the realty in dispute from him in payment of the note given for the goods, she had the same title in and right to sell the land as she had to sell the goods.

The language of the court of appeals in *Lockman* v. *Reilly*, 95 N. Y. 64, is entirely applicable to the facts developed on this record; it being therein said:

"In the present case the effect of the conveyance to the executrix was to make the land in her hands take the place of the mortgage as personal estate, and she was liable to account for it as such. The conveyance had the same effect as if it had been made to her in her individual name. She had full power of disposition of the property; and, although she was liable to account for its proceeds to those interested in the estate, and in that sense she held it as trustee; the trust under which she held it was one created by law, and not by the will of the testator. That will never operated directly upon it. It did not belong to the testator when the will took effect, and the beneficiaries under the will never acquired any direct estate or interest whatever, legal or equitable, in the property, as land. They only had the right to require the executrix to account for it as any other item of personal property in her hands as executrix. The entire legal title was vested in her, and she represented the equitable interests of those who were thus entitled to call her to account."

We hold, therefore, that under the will of W. H. Rector the widow took the title to the personalty affected by the will, with full power and right to sell the same in carrying out the requirements of the will; that she possessed the same right over the realty in question, assuming that it was purchased with property belonging to the testator; that by the contract of sale entered into between Mrs. Rector and Beardsley the latter became entitled, upon payment of the agreed consideration to Mrs. Rector, to a conveyance in fee simple of the land covered by the terms

of that contract; that the defendants have no title, right, or interest in said realty; and that complainants are therefore entitled to a decree removing the clouds cast upon their title by the deeds executed to the defendants and described in the pleadings, and quieting the title of said complainants in and to said realty against the adverse claims asserted thereto by the defendants herein. The decree appealed from is therefore affirmed, at costs of appellants.